# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TANICHA SAINTIGENE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KENDO HOLDINGS, INC.,<br><br>Defendant. | Case No. 22-cv-_____ |

## NOTICE OF REMOVAL

Defendant Kendo Holdings, Inc. ("Defendant"), by and through its counsel, hereby gives notice of removal of this action from the Seventeenth Judicial Circuit Court in and for Broward County, Florida to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. §§ 1331, 1332(d), 1376, 1441, and 1446. In support, Defendant respectfully states as follows:

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. On June 27, 2022, Plaintiff Tanicha Saintigene ("Plaintiff") commenced this putative class action seemingly alleging purported claims under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and its Florida analog, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(8)(a), captioned as *Tanicha Saintigene v. Kendo Holdings, Inc.*, Case Number CACE-22-009314, against Defendant in the Seventeenth Judicial Circuit Court in and for Broward County, Florida (hereinafter, the "State Court Action").

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative complaint against Defendant ("Complaint" or "Compl.") in the State Court Action is attached to this Notice as **Exhibit A**, and true and correct copies of all other process, pleadings, and orders purportedly

served upon Defendant in the State Court Action are attached to this Notice as **Exhibit B**.

3.  A true and correct copy of the Register of Actions from the State Court Action is attached to this Notice as **Exhibit C**.

4.  Plaintiff purportedly served Defendant with a summons and the Complaint in the State Court Action on July 1, 2022. *See* Return of Service filed in the State Court Action, attached hereto as **Exhibit D**. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

## JOINDER

5.  No other defendants have been named in this action, and therefore, no joinder of additional defendants to this removal is necessary.

## RELEVANT ALLEGATIONS

6.  Plaintiff's Complaint seeks relief from Defendant, on behalf of herself and a putative class of similarly-situated persons, for allegedly making or causing to be made unlawful "telephonic sales calls" (specifically, text messages) without the "prior express written consent" of the recipients thereof, in violation of the FTSA and TCPA. *See* Compl. ¶¶ 1, 17-29, 54, 61-67.

7.  More specifically, Plaintiff's Complaint alleges, *inter alia*, that: (i) "Many of Defendant's calls and/or text(s) failed to disclose the name of the individual caller and/or the entity on whose behalf the call was made, and/or a telephone number or address at which the person or entity may be contacted as required pursuant to 47 C.F.R. § 64.1200(d)(4)"; (ii) "Defendant has spammed Plaintiff with over eighty ('80') unsolicited texts"; (iii) "Defendant caused similar telephonic sales calls and/or texts to be sent to a multitude of individuals residing in the State of Florida" including "at least 50 text message solicitations to as many consumers in Florida" in violation of the FTSA; (iv) "Defendant has [allegedly] placed telephonic sales calls and/or texts to telephone numbers belonging to at least 50 persons throughout Florida without their prior express

written consent"; (v) the exact number of putative class numbers is unknown, but is believed to "number in the several thousands, if not more"; (vi) "Defendant…made and/or knowingly allowed the telephonic sales calls and/or [texts] to Plaintiff and the Class members" in this case; (vii) "Defendant sent several unsolicited commercial solicitation texts before 8 a.m. and/or after 8 p.m. local time" in violation of the FTSA and (viii) "The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class."  Compl. ¶¶ 18, 25, 27, 30, 51, 53, 54, 58, 67.

8. The Complaint seeks statutory damages in the amount of at least $500.00 per violation (*i.e.,* "a minimum of $500.00 in statutory damages" for each alleged violative text message sent to Plaintiff and the putative class members under the FTSA and TCPA), injunctive and declaratory relief, and "such further relief as the Court deems just and equitable." *Id.*, Prayer. Furthermore, statutory damages can be trebled under the FTSA and TCPA for willful or knowing violations, up to $1,500 per violation. *See* Fla. Stat. § 501.059(10)(b); 47 U.S.C. § 227(c)(5)(C). Plaintiff also seeks attorneys' fees and costs pursuant to Fla. Stat. § 501.059(11)(b). Compl., Prayer.

9. Defendant disputes all of Plaintiff's allegations, believes the Complaint lacks any merit, and denies that Plaintiff or the putative class has/have been harmed in any way or that this case is capable of or appropriate for class treatment.  By seeking removal, Defendant does not waive any arguments with respect to the Complaint or otherwise in this matter.

## BASIS FOR JURISDICTION

10. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a) and 1446.  This claim could and should have been originally filed in this Court pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction over all claims

and actions arising under the "Constitution, laws or treaties of the United States."

11. Plaintiff's Complaint seems to allege violations of a federal law, namely the TCPA. *See generally* Exhibit A, attached. The Supreme Court of the United States in *Mims v. Arrow Financial Services LLC*, 132 S. Ct. 740, 747-53 (2012), addressed the issue of whether the federal district courts have jurisdiction over TCPA claims, holding that such a claim is, in fact, one that "arises under" the laws of the United States. As such, this Court has federal question jurisdiction over this matter. *See also Duran v. Wells Fargo Bank, N.A.,* 878 F. Supp. 2d 1312, 1315-16 (S.D. Fla. 2012) ("This action was removed to this Court based on federal question jurisdiction, 28 U.S.C. § 1331, because the Complaint alleges a violation of the TCPA. . . . It is established that federal courts have subject matter jurisdiction over TCPA claims.") (internal citation omitted).

12. Moreover, pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Thus, this Court has federal question jurisdiction.

13. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over any state law and common law claims, as such claims are related to the TCPA claim over which this Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution. This includes Plaintiff's FTSA claim.

14. This Court also has jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5), which together provide, *inter alia*, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in

which … any member of a class of plaintiffs is a citizen of a State different from any defendant…" and require that the proposed class must contain at least 100 persons. *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1327 (11th Cir. 2006), *abrogated on other grounds by Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014) (same). As shown below, this case readily meets all of these requirements.

15.  First, the State Court Action is a "class action" under 28 U.S.C. § 1332(d)(2), because Plaintiff seeks to represent three classes of similarly situated individuals pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3). Compl. ¶¶ 53-60; *see also Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23.").

16.  Second, there is minimal diversity between Plaintiff and members of the putative class on the one hand and Defendant on the other. *See, e.g., McDaniel v. Fifth Third Bank*, 568 F.App'x. 729, 731 (11th Cir. 2014) (accepting Plaintiff's allegations as true for purposes of the court's jurisdictional analysis); *Dudley v. Eli Lilly and Co*., 778 F.3d 909, 911-12 (11th Cir. 2014) (minimal diversity met for CAFA where "any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant"). In this regard, Plaintiff alleges that she is a "resident of Broward County, Florida" (Compl. ¶ 3), seeks to certify a Florida-specific class (*id*. ¶ 54), and alleges that Defendant is a "foreign corporation" that "maintains its primary place of business and headquarters in San Francisco, California" (*id*. ¶ 4).

17.  Third, the plausible class number and amount in controversy well exceed the requisite minimums under CAFA based on the face of Plaintiff's Complaint alone. *See, e.g., Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-1062 (11th Cir. 2010) ("[C]ourts may use their

judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements" and may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met); *Fox v. Ritz-Carlton Hotel Co., L.L.C.,* 977 F.3d 1039, 1045 (11th Cir. 2020) ("'If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.'") (quoting *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010)).[1]

18.    In particular, and as noted above, Plaintiff seeks a minimum of $500.00 for each violation, and alleges in her Complaint *inter alia* that: (a) Defendant sent at least eighty (80) text messages to her and caused at least fifty (50) similar texts to be sent to as many consumers in purported violation of the FTSA; (b) "the [putative] Class members number in the several thousands, if not more"; (c) Defendant "knowingly" violated the FTSA for treble statutory damages purposes; and (d) her pleaded claim (*i.e.,* that she allegedly received at least eighty violative text messages that were sent by or behalf of Defendant) is "typical" of the putative class members' claims. Compl. ¶¶ 18, 25, 30, 51, 53, 54, 58, 67.

---

[1] Defendant does not concede (and indeed disputes) that Plaintiff is entitled to recover any damages, nor is it required to do so for present purposes. *See, e.g., Anderson v. Witco Life Ins. Co.,* 943 F.3d 917, 925 (11th Cir. 2019) ("A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"); *Mangano v. Garden Fresh Rest. Corp.*, 2015 WL 5953346, at *1 (M.D. Fla. Oct. 13, 2015) ("A Notice of Removal must plausibly allege the jurisdictional amount, not prove the amount."); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 913 (11th Cir. 2014) ("'[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.' [] Moreover, at the jurisdictional stage, 'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'") (quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751, 754 (11th Cir. 2010)).

19.     Conservatively assuming that "several thousands" of class members, as Plaintiff alleges, means at least 2,000 persons and possibly as many as 3,000 persons ("if not more" according to Plaintiff), the potential number of class members easily exceeds the CAFA threshold of 100.  *See* 28 U.S.C. § 1332(d)(5); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "several" as meaning "more than one or two but not a lot"); *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*, 528 F. Supp. 2d 362, 390 (S.D.N.Y. 2007) (explaining that "several" means "more than two"); *Barrett v. C.O. Matters*, 2015 WL 5881602, at *9, n.9 (M.D. Pa. Sept. 30, 2015) ("Although the word 'several' may sometimes be used to mean 'more than one,' it is typically defined as 'more than two.'") (citing, *inter alia*, *Laboratoires Perouse* and BLACK'S).

20.     Further, based on the allegations in the Complaint and reasonable deductions and inferences to be drawn thereon, the alleged amount in controversy in this case exceeds $5,000,000. *See Roe,* 613 F.3d at 1061-1062; *Williams,* 269 F.3d at 1319; *Fox,* 977 F.3d at 1045.

21.     For example, conservatively estimating that the putative class members received more than one violative text like Plaintiff allegedly did (i.e., that Plaintiff's claims are truly "typical" of the putative class), and that each putative class member would be entitled to up to $1,500 in trebled statutory damages under the FTSA for each of these alleged "knowing" violations, it is plausible that the amount in controversy alleged in this Complaint exceeds the CAFA minimum threshold (*i.e.*, a minimum of 2,000 putative class members, multiplied by two (2) texts each, multiplied by $1,500 per text in trebled damages equals $6 million).  If each class member "typically" received the same number of texts as Plaintiff, the alleged amount in controversy significantly exceeds $5 million (i.e., a minimum of 2,000 putative class members, multiplied by eighty (80) texts each, multiplied by $1,500 per text in trebled damages equals tens

of millions).² Courts in the Eleventh Circuit and elsewhere routinely calculate the amount in controversy for removal purposes in this fashion.³ *See, e.g., Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA); *Torres v. Countrywide Home Loans, Inc.*, 2014 WL 3742141, at *2 (S.D. Fla. July 29, 2014) (calculating amount in controversy under CAFA in this manner, holding that "if every member of the proposed class has a claim worth the same amount as Plaintiff's, the amount in controversy is easily satisfied"); *Bayberry Lakes Homeowners Ass'n, Inc. v. Boeneman*, 2018 WL 6680993, at *1–2 (M.D. Fla. Sept. 28, 2018) (concluding multiplying the amount of damages of one plaintiff across the putative class clearly shows the damages meet the CAFA jurisdictional threshold) (citing *Pretka*, 608 F.3d at 769)); *Bankhead v. Castle Parking Sols., LLC*, 2017 WL 10562976, at *3 (N.D. Ga. Dec. 1, 2017) (determining amount in controversy based on allegations in the complaint alone, using plaintiff's estimates regarding damages and potential class size as a "base amount"); *Scott v. Ing Clarion Partners, LLC*, 2006 WL 3191184, at *4 (N.D. Ga. Oct. 31, 2006), aff'd, 262 F. App'x 983 (11th Cir. 2008) (calculating the amount in controversy for the class by multiplying amount of plaintiff's alleged damages by size of class).⁴ And all this is before possible attorneys' fees

---

² If there are truly "several thousands, if not more" putative class members as Plaintiff alleges, these numbers would only increase the amount in controversy in this case exponentially.

³ Defendant acknowledges that, in *Pretka*, the Eleventh Circuit held that "[t]he typicality element of a class action, by itself, does not allow us to infer that the *amounts* of the named plaintiffs' claims are similar to those of other class members." 608 F.3d at 769 (emphasis in original). Here, the Court need not infer any amounts and need only look to the Complaint. Indeed, according to the Complaint, each putative class member would be entitled to $500 or $1,500 per unlawful text, would had to have received at least one such text be in the class, likely received more than one text, and may have received as many as **eighty texts** (assuming Plaintiff's claim is truly "typical" as alleged).

⁴ *See also Napoli v. HSBC Mortg. Servs. Inc.*, 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to

(which are available under the FTSA) are taken into account, which may also be considered in determining the amount in controversy here. *See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors,* 329 F.3d 805, 808, n.4 (11th Cir. 2003) (courts may also factor in possible attorneys' fee awards, where permitted by statute, when determining the amount in controversy for removal purposes); *Sheffield Woods at Wellington Condo. Ass'n, Inc. v. Scottsdale Ins. Co.*, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (finding amount in controversy met, in part based upon plaintiff's claim for fees pursuant to Florida statute). Therefore, this satisfies the third and final CAFA requirement.

22. Given the foregoing, all three of the CAFA removal requirements are met in this case and, as such, removal to this Court is proper under CAFA as well.

## **VENUE**

23. Venue is proper in this District Court pursuant to 28 U.S.C. §1441(a), because this action was brought in the Seventeenth Judicial Circuit Court in and for Broward County, Florida, which is in the same District as the United States District Court for the Southern District of Florida. Venue is also proper in this District under 28 U.S.C. §1391(b), to the extent that Plaintiff alleges that Defendant made or caused to be made telephonic sales calls into Florida and that she received the allegedly violative text messages within Broward County, Florida. *See* Exhibit A at ¶ 3.

24. Defendant hereby reserves all rights to assert any available defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Fed. R. Civ. P. 12, as well as to amend or supplement this Notice of Removal.

---

simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (collecting cases); *Alper v. Select Portfolio Servicing, Inc.*, 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) ("Because named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages of a typical class member."); *In re Blackbaud, Inc.*, 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (ruling similarly).

## CONCLUSION

25. Defendant, having satisfied all requirements for removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, respectfully submits this Notice of Removal, requests that the State Court Action be removed to this Court, and requests that the Court assume full jurisdiction over the case herein as provided by law.

WHEREFORE, Defendant hereby respectfully removes this civil action to this Court.

Dated: July 29, 2022

Respectfully Submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*
  Josh A. Migdal, Esq.
  Florida Bar No. 19136
  josh@markmigdal.com
  Yaniv Adar, Esq.
  Florida Bar No. 63804
  yaniv@markmigdal.com
  eservice@markmigdal.com

*Attorneys for Defendant Kendo Holdings, Inc.*

## CERTIFICIATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on July 29, 2022, which served same electronically upon all counsel of record.

/s/    Yaniv Adar
Yaniv Adar